**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

```
-----------------------------x
                             :
ALICIA M. SHERRY             :     Civil No. 1:17CV01102 (HBF)
                             :
v.                           :
                             :
NANCY A. BERRYHILL, ACTING   :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Alicia M. Sherry brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security which denied her application for Disability Insurance Benefits ("DIB") of the Social Security Act, 42 U.S.C. §401 et seq. ("the Act"). Plaintiff has moved to reverse or remand the case for a rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Judgment on the Pleadings **[Doc. #14]** is **GRANTED**. Defendant's Motion and Motion for Judgment on the Pleadings **[Doc. #18]** is **DENIED**.

## I. ADMINISTRATIVE PROCEEDINGS

The procedural history of this case is not disputed. Plaintiff protectively filed an application for DIB on November

1

6, 2013, alleging disability as of April 11, 2013.[1] [Certified Transcript of the Record, Compiled on January 24, 2018, Doc. #5 (hereinafter "Tr.") 19, 153-54]. Plaintiff alleged disability due to "back and disc problems." [Tr. 170]. Her DIB claim was denied on January 23, 2014. [Tr. 19, 75-88]. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on March 3, 2014. [Tr. 91-98].

On March 11, 2016, Administrative Law Judge ("ALJ") Susan Smith held a hearing, at which plaintiff appeared with an attorney and testified. [Tr. 48-74]. Vocational Expert ("VE") Joseph Atkinson also testified at the hearing. [Tr. 68-74]. On April 12, 2016, the ALJ found that plaintiff was not disabled, and denied her claim. [Tr. 16-32]. Plaintiff filed a timely request for review of the hearing decision on April 4, 2016. [Tr. 12-14]. On August 28, 2017, the Appeals Council denied review, thereby rendering ALJ Smith's decision the final decision of the Commissioner. [Tr. 1-5]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse and/or remand the Commissioner's decision.

---

[1] Plaintiff's date last insured for Title II benefits is December 31, 2017. [Tr. 21].

## II.  STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of

3

the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to

determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports <u>the ALJ's decision</u>." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Ms. Sherry must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); <u>see also</u> 20 C.F.R. §404.1520(c)

(requiring that the impairment "significantly limit[ ] ... physical or mental ability to do basic work activities" to be considered "severe").[2]

There is a familiar five-step analysis used to determine if a person is disabled. <u>See</u> 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (<u>per curiam</u>). If and only if the claimant does <u>not</u> have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work

---

[2] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 <u>et seq</u>., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

which the claimant could perform. Under the cases
previously discussed, the claimant bears the burden of
proof as to the first four steps, while the Secretary
must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given his residual functional capacity." Gonzalez ex rel. Guzman

v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d

Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore

v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)).

"Residual functional capacity" is what a person is still capable

of doing despite limitations resulting from his physical and

mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1)

the objective medical facts; (2) diagnoses or medical opinions

based on such facts; (3) subjective evidence of pain or

disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience."

Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation

omitted). "[E]ligibility for benefits is to be determined in

light of the fact that the Social Security Act is a remedial

statute to be broadly construed and liberally applied." Id.
(citation and internal quotation marks omitted).

**IV. THE ALJ'S DECISION**

Following the above-described five step evaluation process,
ALJ Smith concluded that plaintiff was not disabled under the
Social Security Act. [Tr. 16-32]. At step one, the ALJ found
that plaintiff had not engaged in substantial gainful activity
since April 11, 2013, the alleged onset date. [Tr. 21].

At step two, the ALJ found that plaintiff had cervical
spine disc herniation without myelopathy; thoracic spine disc
herniation without myelopathy; lumbar spine disc herniation
without myelopathy, status post anterior lumbar discectomy at
L5-S1 with partial corpectomy and fusion with hardware; carpal
tunnel syndrome, status post bilateral carpal tunnel release;
cubital tunnel syndrome; and tenosynovitis, all of which are
severe impairments under the Act and regulations. Id.

At step three, the ALJ found that plaintiff's impairments,
either alone or in combination, did not meet or medically equal
the severity of one of the listed impairments in 20 C.F.R. Pt.
404, Subpart P, Appendix 1. [Tr. 24-25]. The ALJ specifically
considered Listings 1.02 (major dysfunction of a joint(s) (due
to any cause), 1.04 (disorders of the spine) and 11.00
(neurological disorders). [Tr. 24-25]. The ALJ also conducted a
psychiatric review technique and found that plaintiff had a mild

restriction in activities of daily living, social functioning, and concentration, persistence or pace. [Tr. 23-24]. The ALJ found no episodes of decompensation. [Tr. 24].

Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform light work as defined in 20 C.F.R. 404.1567(b) except she can occasionally climb stairs and ramps, stoop, kneel, balance, and crouch. She should never climb ropes, ladders, or scaffolds or crawl. The claimant must avoid concentrated exposure to hazards including uneven terrain, unprotected heights, and dangerous, moving machinery. She can frequently use the hands bilaterally for grasping and fingering. The claimant is limited to low stress; that is, no high production quotas or fast-paced assembly lines.

[Tr. 25].

At step four, the ALJ found plaintiff was unable to perform any past relevant work. [Tr. 31]. At step five, after considering plaintiff's age, education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. [Tr. 31-32].

The ALJ concluded that plaintiff had not been under a disability from April 11, 2013, the alleged onset date of disability, through April 12, 2016, the date of the ALJ's decision.

## V.  DISCUSSION

Plaintiff first argues that the RFC assessment was not supported by substantial evidence and was legally erroneous. An ALJ has the responsibility to determine a claimant's RFC based on all the evidence of record. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). The RFC is an assessment of "the most [the disability claimant] can still do despite [his or her] limitations." 20 C.F.R. §404.1545(a)(1), 416.945(a)(1). Although "[t]he RFC determination is reserved for the commissioner...an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record.... Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." Walker v. Astrue, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010)(quoting Lewis v. Comm'r of Soc. Sec., No. 6:00CV1225(GLS), 2005 WL 1899, at *3 (N.D.N.Y. Aug. 2, 2005)(internal citations omitted)). Nevertheless, plaintiff has the burden to demonstrate functional limitations that would preclude any substantial gainful activity. See 20 C.F.R. §§§404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); 42 U.S.C. §423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security

may require."). Although the RFC is assessed using "all the relevant evidence in [the] case record," id., the medical opinion of a treating physician is given "controlling weight" as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Plaintiff argues that "the ALJ rejected all of the medical opinions of record and relied solely on her lay interpretation of bare medical findings to make the physical residual functional capacity determination. [The ALJ's] lay determination did not constitute substantial evidence, and remand is warranted for proper consideration." [Doc. #14-1 at 21]. The Court agrees.

The administrative record in this case contains numerous detailed treatment records, medical opinions from treating and examining sources that relate the medical evidence to what plaintiff can and cannot do functionally. Plaintiff accurately points out that there are numerous disability assessments supported by functional limitation by her treating providers in the record and there is no dispute that plaintiff was disabled from returning to her work as a CNA. [Tr. 31]. It is also undisputed that plaintiff did not work after the April 11, 2013 motor vehicle accident, that the injuries sustained were due to the accident, that conservative treatment did not relieve her

symptoms and that she underwent three surgeries.[3] During the
relevant period under review, there is no opinion of record that
plaintiff was able to work and/or was ready to return to work.
The Court cannot conclude that there was substantial evidence to
support the ALJ's RFC determination that plaintiff was capable
of light work with restrictions and is left without a clear
indication of how the ALJ reached the RFC determination without
resorting to impermissible interpretation of raw medical data.

Plaintiff began treatment with orthopedist Dr. A. Marc
Tetro in October 2013, for injuries sustained in the motor
vehicle accident resulting in bilateral cubital tunnel syndrome,
bilateral carpal tunnel syndrome and bilateral hand diffuse
flexor tenosynovitis. [Tr. 276]. During the treatment
relationship, Dr. Tetro found that plaintiff "was unable to work
and would be considered disabled with regards to the usual
occupation." [Tr. 277 (October 16, 2013); Tr. 271 (November 27,
2013); Tr. 424 (January 10, 2014); Tr. 427 (January 17, 2014);
Tr. 432 (February 28, 2014); Tr. 437 (March 18, 2014). In
October 2014, Dr. A. Marc Tetro performed bilateral carpal
tunnel release surgery after conservative care failed to provide

---

[3] Dr. Tetro performed carpal tunnel release surgery on plaintiff's
left side on October 16, 2014, and on her right side on October
30, 2014. Dr. Huckell performed an anterior lumbar discectomy
L5-S1, partial corpectomy fusion using cage, plate and BMP
surgery on September 16, 2015.

relief of symptoms or improvement. [Tr. 443-46]. By December 2014, Dr. Tetro found that plaintiff had no disability "with regards to her bilateral hands/wrists; however patient may have restrictions for other motor vehicle related body part injuries by other physicians." [Tr. 458]. The ALJ gave some weight to Dr. Tetro's opinion that plaintiff was disabled "from her work as a certified nurse's assistant ...However, it is vague and addressed the ultimate issue of disability, which is reserved for the Commissioner. In addition, Dr. Tetro's notes show that the claimant did well after carpal tunnel release surgery." [Tr. 30].

To Dr. Pratibha Bansal's November 20, 2013 opinion that plaintiff had a 75% temporary impairment, the ALJ assigned "little weight because it was stated in connection with different standards and does not provide a function-by-function assessment." [Tr. 30, 565].

To Consultative Examiner Dr. John Schwab's January 14, 2014, opinion, the ALJ assigned "little weight as it was based on a one-time evaluation that occurred before the claimant underwent fusion surgery and it does not account for the full extent of the claimant's injuries." [Tr. 30, 385-88].

Of significance is the opinion of plaintiff's spinal surgeon, Dr. CameronHuckell. Plaintiff's spinal injuries were initially treated by Dr. Mikhail Strut shortly after the motor

vehicle accident in April 2013. [Tr. 251-63]. Throughout the treating relationship, Dr. Strut opined that plaintiff had a "total temporary disability for now" and was unable to return to her job. [Tr. 264 (April 22, 2013); Tr. 256 (May 6, 2013); Tr. 258 (June 3, 2013); Tr. 261 (July 1, 2013); Tr. 263, 265 (August 20, 2013)]. Her care was transferred to orthopedist Dr. Huckell in September 2013. [Tr. 280-83]. Dr. Huckell's treatment notes include detailed notations of physical examination of plaintiff's musckuloskeletal system (including gait, physical inspection, range of motion, strength, straight leg raises), neurologic system (including deep tendon reflexes, sensation and pathologic reflexes), and her psychiatric status. [Tr. 282, 377, 440, 449, 462, 467, 472, 477, 482, 488, 493, 755]. During this period, Dr. Huckell also opined that plaintiff was temporarily disabled as a result of the accident. [Tr. 283 (September 20, 2013); Tr. 378 (December 19, 2013)]. Beginning in April 2014, and again in March 24, 2015, Dr. Huckell opined that plaintiff had a "permanent partial disability at this time as a result of the motor vehicle accident dated 4/11/13. We recommend an FCE [functional capacity evaluation] for specific work restrictions." [Tr. 441 (April 24, 2014), Tr. 450 (October 8, 2014), Tr. 463 (December 22, 2014), Tr. 468 (January 22, 2015), Tr. 473 (March 24, 2015), Tr. 478 (June 22, 2015)]. In treatment notes dated March 24, 2015, Dr. Huckell noted that plaintiff was

"still unable to perform her job as a certified nursing assistant and in the long run I think she should look for a less strenuous type of work." [Tr. 471]. In June 2015, the doctor noted that despite epidural injections, physical therapy, chiropractic therapy and pain management, plaintiff's "symptoms continued to progress" and she was "considering her surgical options." [Tr. 478]. On July 30, 2015, Dr. Huckell noted that plaintiff reported "significant lumbar and thoracic pain." [Tr. 481]. "[S]he has failed extensive conservative care. She now has intractable and intolerable pain and I consider her to be a reasonable candidate for anterior lumbar discectomy, partial corpectomies and fusion using cage, plate and BMP at L5-S1." Id. On July 30 and September 9, 2015, Dr. Huckell opined that plaintiff had a permanent partial disability from the motor vehicle accident and was totally disabled from work as a CNA because it provoked her severe back pain. [Tr. 483, 489, see also Tr. 494 (October 8, 2015), Tr. 756 (October 15, 2015), Tr. 760 (January 19, 2016)]. An anterior L5-S1 fusion was performed on September 16, 2015. [Tr. 753]. In post-operative examinations, plaintiff reported that her pain improved and she was happy with her recovery; the incision was healing, and x-rays showed a normal post-op study with good consolidation of the bone graft. [Tr. 493 (October 8, 2015), Tr. 756 (October 15, 2015), Tr. 760 (January 19, 2016)].

Beginning in April 2014, Dr. Huckell recommended a Functional Capacity Assessment for "specific work restrictions." [Tr. 441 (April 24, 2014); Tr. 450 (October 18, 2014); Tr. 463 (December 22, 2014); Tr. 468 (January 22, 2015); Tr. 473 (March 24, 2015); Tr. 478 (June 22, 2015)]. Nevertheless, the ALJ assigned "little weight" to Dr. Huckell's opinion, explaining that

> While the undersigned notes that less strenuous work is reasonable for this clamant, the undersigned gives Dr. Huckell's opinion that the claimant was temporarily disabled little weight because it is vague and addressed the ultimate issue that is reserved to the Commissioner. In addition, his notes show that the claimant did well and improved to increase[] her activity as tolerated after her fusion surgery, indicating she was not totally disabled.

[Tr. 30].

Thus, after assessing all of the medical evidence from plaintiff's treating physicians and assigning their opinions "some" or "little weight" the ALJ considered the vocational expert's reports.

On April 29, 2015, Alan C. Winship, MS Ed., CRC, D-ABVE, CLCP, interviewed plaintiff, reviewed her medical records, and performed vocational testing. [Tr. 210-23]. An Addendum Report was prepared on December 2, 2015, after plaintiff underwent the lumbar discectomy L5-S1, partial corpectomy and fusion using cage, plate and BMP on September 15, 2015, that included a review of additional and post-surgical treatment records from

Dr. Huckell. [Tr. 224-26]. Windship opined that "due to the injury and subsequent impairment of Ms. Sherry[] cervical, thoracic and lumbar spine, bilateral carpal tunnel syndrome and bilateral cubital tunnel syndrome that Ms. Sherry[] will have limited success in attempting to return to work without the assistance of a Certified Rehabilitation Counselor." [Tr. 225-26]. He indicated that Ms. Sherry had not been "released to return to work in some form by Dr. Huckell." [Tr. 226 (emphasis added)]. Mr. Winship assessed that upon returning to work, it would be beneficial for Ms. Sherry "to start on a part-time capacity for approximately 20 hours per week and gradually increase her hours, under the supervision of Dr. Huckell and a rehabilitation counselor, to full-time assuming she finds that she is capable of doing so." [Tr. 226].

The ALJ also assigned "little weight" to Mr. Winship's opinion, stating that while she agreed

> that the claimant lacks the capacity to perform the nursing assistant work, nonetheless the undersigned gives little weight to this opinion as the reduction to part-time hours is not justified by the medical evidence of record. Moreover, this opinion does not provide a specific function-by-function analysis. The record as a whole does not justify any greater restrictions than are provided in the above residual functional capacity."

[Tr. 30-31].

However, the ALJ failed to identify any inconsistent medical evidence to support her findings. Sears v. Astrue, Civil

Action No. 2:11-CV-138, 2012 WL 1758843, at *3 (D. Vt. May 15, 2012)("While the Commissioner is thus free to decide that the opinions of 'other sources,'... are entitled to no weight or little weight, those decisions should be explained."). Further, the ALJ failed to evaluate Mr. Winship's opinion according to Social Security Ruling ("SSR") 06-03P, which provides that, in evaluating "all relevant evidence in the case record," the ALJ must consider not only opinion evidence from "acceptable medical sources,' but also evidence provided by "non-medical sources including ...rehabilitation counselors ...." 2006 WL 2329939 at *6 (S.S.A. Aug. 9. 2006). "[I]nformation from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Id.; see Patel v. Colvin, No. 10-CV-04617 (ENV), 2013 WL 3873234, at *6 (E.D.N.Y. July 25 (2013)(finding that the vocational expert "qualified as a non-medical or 'other' source, and her report is a major piece of evidence which might well have influenced the ALJ's decision.") (citation and internal quotation marks omitted); Colon v. Astrue, No. 11-CV-210A, 2013 WL 2245457, at *10 (W.D.N.Y. May 21, 2013) ("Even assuming that Dr. Moss-King was acting only in her capacity as a Vocational Rehabilitation Counselor, it did not entitle ALJ Straub to disregard her opinion without explanation."); see SSR 06-03p, 2006 WL 2329939

at *6 ("the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case"). In evaluating the opinions of "other sources", "SSR 06-03p directs the Commissioner to use the same factors ... as are used to evaluate the opinions of 'acceptable medical sources,' including treating physicians.... These factors include but are not limited to the length of the treatment relationship, the frequency of evaluation, and the degree to which the opinion is supported and consistent with the record." 2006 WL 2329939, at *4.

Mr. Winship's reports reflect a thorough examination of Ms. Sherry's residual employability, based not only on the detailed review of her medical records and vocational capacity during the relevant time period, but also on direct personal contact with plaintiff during the interview process. [Tr. 210-23; 224-26]. At the time of both reports, Ms. Sherry had not been cleared to return to work in any form by her surgeon Dr. Huckell. The reports present a detailed explanation of the evidence supporting Mr. Winship's opinion that, given plaintiff's limited residual functional capacity due to the injuries sustained in the accident, she would be unable to perform not just her past

relevant work, but "remain[ed] totally disabled in the present time while she recovers from the L5-S1 fusion that she underwent on September 16, 2015." [Tr. 226]. He added that plaintiff would "have limited success in attempting to return to work without the assistance of a Certified Rehabilitation Counselor." [Tr. 225-26]. He further stated that "[i]t remains my professional opinion that once released to participate in vocational rehabilitation services Ms. Sherry[] will require two to three years to complete a program to provide her with job skills consistent with her residual functional capacity" and "[u]pon returning to work, it would be beneficial for Ms. Sherry[] to start on a part-time capacity for approximately 20 hours per week and gradually increase her hours, under the supervision of Dr. Huckell and a rehabilitation counselor, to full-time assuming she finds that she is capable of doing so." [Tr. 226].

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, 2006 WL 2329939, at *6; see Buck v. Colvin, No. 12-CV-857-JTC, 2014 WL 338841, at *7 (W.D.N.Y Jan. 30, 2014).

After discounting all of the opinions from plaintiff's treating physicians and the vocational specialist, the ALJ found that "[t]aking into account the combination of impairments and history of surgery, it is found reasonable to reduce the claimant to light exertion, with postural, manipulative, and environmental limitations noted, and excluding jobs requiring fast pace assembly line or high production." [Tr. 30]. The Court is unable to reconcile the ALJ's RFC finding with the medical evidence of record, the opinions of Ms. Sherry's treating physicians, and the vocational expert reports. The Court finds that the ALJ's RFC is not grounded in the medical record or otherwise properly supported. While the Commissioner is free to decide that the opinions of treating sources and other sources are entitled to no weight or little weight, those decisions should be thoroughly explained. Sears, 2012 WL 1758843, at *3. Indeed, when an ALJ rejects all physician opinion evidence and a detailed functional assessment, an evidentiary deficit exists. Because there is no medical source opinion or functional assessment supporting the ALJ's finding that Ms. Sherry can perform light work with restrictions, the Court concludes that the RFC determination is without substantial support in the record and a remand for further administrative proceedings is

appropriate. <u>See</u> <u>House v. Astrue</u>, No. 5:11-CV-915 (GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (citing <u>Suide v. Astrue</u>, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand.)).

Accordingly, the Court finds that the ALJ's conclusion that plaintiff can perform light work with limitations is not supported by substantial evidence and additional administrative proceedings are required. This case is remanded for proper consideration of the RFC in accordance with the medical evidence, treating source opinions, functional assessment and regulations. On remand, the ALJ should develop the record as necessary to obtain opinions as to plaintiff's functional limitations from treating and/or examining sources and thoroughly explain her findings in accordance with the regulations.

## VI.  CONCLUSION

For the reasons stated, plaintiff's Motion for Judgment on the Pleadings **[Doc. #14]** is **GRANTED.** Defendant's Motion for Judgment on the Pleadings **[Doc. #18]** is **DENIED.**

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further

administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #16] on September 25, 2018, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

SO, ORDERED at Bridgeport, Connecticut this 5th day of February 2019.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE